UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LONNIE MAXSON,**

    **Plaintiff,**

  v.

**FRANKLIN COUNTY OHIO SHERIFF
DALLAS BALDWIN,**

    **Defendant.**

**Case No. 2:22-cv-03124
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson**

---

**NATALIE AUGENSTEIN,**

    **Plaintiff,**

  v.

**FRANKLIN COUNTY OHIO SHERIFF
DALLAS BALDWIN,**

    **Defendant.**

**Case No. 2:22-cv-03126
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff Lonnie Maxson's Complaint (ECF No. 15, Case No. 2:22-cv-3124[1]) and Defendant's Motion to Dismiss Plaintiff Augenstein's Complaint (ECF No. 14, Case No. 2:22-cv-3126). For the reasons that follow, the Court **GRANTS** both motions.

---

[1] Unless otherwise noted, all docket references will be to this lead case, Case No. 2:22-cv-3124.

**I.**

Plaintiff Lonnie Maxson filed this action against Defendant Sheriff Dallas Baldwin, Franklin County, Ohio, alleging violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and Ohio's disability discrimination law, Ohio Revised Code § 4112 *et seq.* (ECF No. 10.) Plaintiff alleges that Defendant treated him less favorably than his coworkers based on his disability by terminating his employment with the Franklin County Sheriff's Office and failing to accommodate his disability. *Id*. Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 15.) In the alternative, Defendant moves to dismiss Counts Two and Four of Plaintiff's Complaint for failure to exhaust administrative remedies. (*Id.*) The motion is fully briefed and ripe for review. (ECF Nos. 15, 17, 18.)

Plaintiff Natalie Augenstein, who is a coworker Lonnie Maxson, alleges that Defendant violated the ADA by discriminating against her based on her association with a disabled person, *i.e.*, Mr. Maxson. That motion too is fully briefed. (ECF Nos. 14, 16, 17.)  In that briefing, Plaintiff Augenstein correctly states that, "[s]hould the Court initially determine that Lonnie Maxson was not disabled pursuant to the ADA, Defendant's argument would prevail and Plaintiff's complaint would be dismissed."  (Pl. Mem. in Opp. at 1, ECF No. 14.)  Based on the analysis below, wherein the Court finds that Plaintiff Maxson has failed to state a claim upon which relief can be granted, Plaintiff Augenstein's claim necessary fails as well.

**II.**

In the Amended Complaint (ECF No. 10), Plaintiff Lonnie Maxson alleges that at age 19, Plaintiff suffered a "disabling back injury" requiring extensive medical treatment, including spinal bone fusion surgery, and the insertion of two steel rods and an artificial lumbar disk in his

2

back. (*Id*. ¶ 20.) The injury and treatment had lifelong effects, "substantially limit[ing] his ability to work, walk, lift items, bend and stoop to pick up items and to earn a living as a motorcycle racer." (*Id*.)

Mr. Maxson worked as a deputy at the Franklin County Sheriff's Office from October 24, 2016, until his termination on April 30, 2021. In his last year of employment with the Sheriff's Office, Plaintiff reinjured his back "during an incident with an inmate" and reported the injury to his supervisor. (*Id*. ¶ 24.) The reinjury also "substantially limited [Plaintiff's] ability to walk, lift items, bend and stoop to pick up items, and mentally focus." (*Id*. ¶ 21.) Plaintiff requested accommodations for his back injury in the form of reassignment to an area that did not require walking and significant lifting. Plaintiff also requested days off on days when he received back injections. Sgt. Jacob Heaberlein denied both requests, "alleging that the shift was short staffed." (*Id*. ¶ 23.) Plaintiff also requested reassignment to an area that did not require as much walking, which was also allegedly denied.

Plaintiff avers that in order to manage his back injury, he used some medications "as prescribed to reduce the pain," took prescription pain medicine not as prescribed, and he also used marijuana that was not prescribed, but acquired illegally "to reduce the pain and accommodate the disabling effects of the [back injury]." (*Id*. ¶ 27.) Plaintiff states that the injections and prescription medicine that he took while off duty enabled him to do his job as a corrections deputy. (*Id*. at ¶ 24.) During this time, Plaintiff admits he developed an addiction to the prescribed pain medications, marijuana, and alcohol. Plaintiff alleges that both his addiction and his back injury are disabilities.

3

Plaintiff was eventually placed on the Ohio Automated Rx Reporting System ("OARRS")[2] because of the frequency and/or dosage with which he sought prescriptions for pain medication. On February 18, 2021, Plaintiff was denied a prescription while at an emergency room. That day, a nurse in the emergency room called one Defendant's employees and informed him that Plaintiff had been denied a prescription. The following day, on February 19, 2021, Plaintiff was placed on administrative leave and given a reasonable suspicion drug test. On March 5, 2021, Defendant received the results of the drug test, which showed that Plaintiff had tested positive for marijuana, and negative for all opioid substances.

On April 14, 2021, based on its investigation Defendant's Internal Affairs Division pursued criminal charges against Plaintiff for Deception to Obtain Dangerous Drugs, Ohio Revised Code § 2925.22. On April 20, 2021, one of Plaintiff's superiors interviewed and drug tested him based on his "blood shot eyes, a red face and slow and slurred speech." (*Id.* ¶ 34.) After the interview, Plaintiff was arrested and incarcerated for Deception to Obtain Dangerous Drugs, Ohio Revised Code § 2925.22.

Two days later, on April 22, 2021, the second drug test's results showed negative "for all tested substances including opiates." (*Id.* ¶ 35.) While incarcerated, Plaintiff admitted to his mother on the phone that he believed he was going through withdrawal from drugs and alcohol.

---

[2] "OARRS is a prescription monitoring system. When a prescription for a controlled substance is filled, the pharmacist enters information about the patient and the prescription into a database. Law enforcement and healthcare professionals have access to the database. Law enforcement uses the information to prevent diversion of prescriptions for controlled substances. Healthcare professionals use the information to monitor a patient's prescriptions for controlled substances." *United States v. Temeck*, No. 1:17CR050, 2018 WL 3609503, at *1 (S.D. Ohio July 27, 2018) (internal citations omitted).

4

On April 23, 2021, Plaintiff pleaded guilty to a reduced charge of violation of Ohio Revised Code § 2923.02, Attempt to Commit an Offense and agreed to participate in the Helping Achieve Recovery Together (H.A.R.T.)[3] treatment program for two years.

On April 30, 2021, the Sheriff terminated Plaintiff by letter that stated in its entirety:

This is to advise you your employment is terminated effective April 30, 2021 for violating the following regulations:

> • *AR102:2 Obedience to Laws and Ordinances;*
>
> • *AR102:3 Knowledge Rules and Regulations, Laws;*
>
> • *ARI02:4 Violation of Rules and Regulations or Directives;*
>
> • *ARI02:15 Use of Official Position;*
>
> • *ARJ02:19 Association with Wrong Elements;*
>
> • *4RI02.29 Unbecoming Conduct;*
>
> • *4RI02: 43/43.I Cause for Suspension or Dismissal / Possession of Use of Drugs (on or off duty);*
>
> • *AR102:43/43.1 Cause for Suspension or Dismissal / Obscene or Immoral Conduct;*
>
> • *AR102:43/43.1 Cause for Suspension or Dismissal / Unbecoming Conduct;*
>
> • *AR102:43/43.1 Cause for Suspension or Dismissal/ Violations of Rules, Regulations, Policies and Procedure.*

> On April 20, 2021 you were arrested and charged with violating Ohio Revised Code section 2925.22 - Deception to Obtain a Dangerous Drug. You also tested positive for Marijuana use in February. On April 23, 2021 you subsequently plead guilty to an amended misdemeanor charge irt exchange for admission into the HART program. Your conduct is reprehensible, and you have lost the trust of this office along with the public you have sworn to protect and serve.

---

[3] H.A.R.T. is a drug court in Franklin County that allows Defendants with drug charges to avoid incarceration by instead enrolling in a two year, four phase recovery treatment plan. *See* Franklin County Municipal Court, https://www.franklincountymunicourt.org/Departments-Services/Specialized-Dockets/Hart-Court (last visited 6/14/2023).

5

> Arrangements must be made with your attorney for turning in your uniforms, and any other items that belong to the office.

(Termination letter, ECF No. 1-1.)

On January 13, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and the Ohio Civil Rights Commission, alleging that Defendant discriminated against him on the basis of his addictions to alcohol and prescription medicine. (Am. Compl. Charge of Discrimination,[4] ECF No. 15-1.) After receiving a right-to-sue letter from the EEOC, Plaintiff filed suit alleging four counts against Defendant: (1) disparate treatment under the ADA; (2) failure to reasonably accommodate a disability under the ADA; (3) disparate treatment under Ohio's disability discrimination laws; and (4) failure to reasonably accommodate a disability under Ohio's disability laws.

### III.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[4] "[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (first citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); then citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying plausibility standard articulated in *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## IV.

Defendant moves for dismissal based on two theories: (1) failure to state a claim for which relief can be granted with respect to all counts; and alternatively (2) failure to state a claim due to failure to exhaust administrative remedies with respect to Counts Two and Four, which allege failure to reasonably accommodate Plaintiff's back injury. (ECF No. 15.) The Court turns first to analyzing the failure to state a claim, which is dispositive of Defendant's motion.

"Title I of the ADA prohibits employers from discriminating against a qualified individual because of a disability." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444-45 (6th Cir. 2020) (citing 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(b), (e)). "Ohio's disability discrimination law parallels the [Americans with Disabilities Act] in all relevant respects." *Belasco v. Warrensville Heights City School District*, 634 Fed.App'x. 507, 514 (6th Cir. 2015) (first citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); then citing *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 (1998)). Therefore, the Court "appl[ies] the same analytical framework, using cases and regulations interpreting the ADA as guidance in our interpretation of Ohio Rev. Code § 4112.02." *Id.*

"To state a claim of discrimination under the ADA, [Plaintiff] must plead facts that make plausible the inference that (1) []he is disabled, (2) []he is qualified to perform h[is] job requirements with or without reasonable accommodation, and (3) []he would not have been

7

discharged but for the disability." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). A qualified individual means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position the individual holds. 42 U.S.C. § 12111(8).

Defendant maintains that because Plaintiff is "currently engaging" in the illegal use of drugs, he is not a qualified individual with a disability under the ADA. (Mot. to Dismiss at 6, ECF No. 15) (citing 42 U.S.C. § 12114(a) and *Peters v. Interstate Warehousing, Inc.*, No. 3:10-cv-00970, 2012 WL 10609, at *6 (M.D. Tenn. Jan. 3, 2012)). Defendant continues, positing that "'[c]urrently engaging' is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question. . . . [r]ather, the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Disbennett v. Millcraft Paper Co.*, No. 3:08-cv-041, 2008 WL 4372657, at *4 (S.D. Ohio Sept. 19, 2008) (citing *Johnson v. City of Columbus*, No. C-2-99-531, 2001 WL 605040, at *4 (S.D. Ohio May 29, 2001)).

Plaintiff disagrees that his drug use is sufficiently "current" because a reasonable inference can be made that he had not used illegal drugs for approximately two months and seven days before he was terminated. (Pl. Mem. in Opp. at 8, ECF No. 17.) Further, he responds that "his circumstances present a unique, if not a case of first impression, in this Circuit, of an exception to the exclusion of a person with a disability currently engaging in illegal drug usage from the protection of the ADA." (Mem. in Opp. at 3, ECF No. 17.) Plaintiff then indicates that the exception to the exclusion to which he refers is based on policies of Defendant:

> Specifically, there is an affirmative duty on the part of the Defendant employer through its supervisors to actively intervene with "PROCEDURES" without requiring the Plaintiff, as an employee, to request any help or accommodation.

8

> "Since the personal problems of the employee can hinder that objective, the role of supervision in the Employee Assistance Program is very important.  If the supervisor believes that an employee's personal problems may be contributing to unsatisfactory performance, *the following steps shall be taken*:" [Emphasis added not in the original] [Amended CP Exhibit 3 Doc# 10-1 PAGEID #: 153-154].
>
> Further, there is no prohibition or restriction from applying the mandates of this policy to employees who have violated any rules of conduct or who have been charged or convicted of criminal misbehavior.
>
> The PROCEDURES then lists what the supervisors are required to do to help the employee which includes, but is not limited to, using the Employee Assistance Program Coordinator for assessment and referral if there is doubt if the unsatisfactory performance is related to a personal problem; otherwise refer the Employee Assistance Program (EAP) and/or make an appointment at EAP in the presence of the employee. *Id*. Further, the policy does not distinguish between current or past drug abuse or place any time limit for discontinued use before making the provisions available to the Plaintiff/employee.

(Pl. Mem. in Opp. at 4, ECF No. 17.)

While there may be a situation where it would be appropriate to consider an exception to the exclusion from ADA protection of a person with a disability currently engaging in illegal drug use, this is not the case.

First, the rules and procedures upon which Plaintiff relies are directed to an employee's "unsatisfactory performance."  (stating that the "employee's personal problems may be contributing to *unsatisfactory performance*,"; "if there is doubt if the *unsatisfactory performance* is related to a personal problem,").  Here, Plaintiff was not terminated for unsatisfactory performance, but instead for criminal misconduct outside of his employment related to the use of illegal drugs and the misuse of prescription drugs.  These undisputed facts differentiate Plaintiff from his coworkers who were disciplined for alcohol abuse and disorderly conduct.  Second, Plaintiff was not simply abusing drugs and alcohol, but he was charged and plead guilty to a criminal offense related to this abuse and misuse.

9

In any event, even assuming that Plaintiff is disabled and that he is otherwise qualified to perform his job with or without accommodation, his claim fails. This is because "[e]mployers must be allowed to terminate their employees on account of misconduct 'irrespective of whether the employee is handicapped.'" *Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1183 (6th Cir. 1997) (citations omitted). As the Sixth Circuit explained in *Mararri*, "it was appropriate to distinguish between a discharge on the basis of misconduct (in that case, drunken driving by a college football coach) and a discharge on the basis of a disability (alcoholism)." *Id*. ("Mararri continues to argue that his violation of the L.C.A. was a result of his alcoholism and that his termination was therefore unlawful because it resulted from his disability. We disagree."). "The ADA does not exempt disabled individuals from reasonable rules of conduct." *Dockery v. City of Chattanooga*, 134 F.3d 370 (6th Cir. 1997). Consequently, whether Plaintiff is disabled is of no moment in this Court's current analysis.

V.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff Lonnie Maxson's Complaint (ECF No. 15, Case No. 2:22-cv-3124), **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** Case No. 2:22-cv-3124.

The Court also **GRANTS** Defendant's Motion to Dismiss Plaintiff Augenstein's Complaint (ECF No. 14, Case No. 2:22-cv-3126), **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** Case No. 2:22-cv-3126.

**IT IS SO ORDERED.**

**7/27/2023**　　　　　　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**